## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ALICIA OLIVO, Administrator of the** | ) | **CASE NO.: 1:25-cv-2753** |
| **Estate of CARL RYAN GOLD,** | ) | |
| **Deceased** | ) | **JUDGE: DAVID A. RUIZ** |
| **c/o The Brunn Law Firm Co., L.P.A.** | ) | |
| **700 West St. Clair Avenue, Suite 208** | ) | |
| **Cleveland, Ohio 44113** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **FIRST AMENDED COMPLAINT** |
| | ) | **(Jury demand endorsed hereon)** |
| **THE CITY OF GARFIELD HEIGHTS** | ) | |
| **c/o Mayor Matthew Burke** | ) | |
| **Civic Center** | ) | |
| **5407 Turney Road** | ) | |
| **Cleveland, Ohio 44125** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MARK KAYE, Chief of Police** | ) | |
| **Garfield Heights Police Department** | ) | |
| **5555 Turney Road** | ) | |
| **Cleveland, Ohio 44125** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JACK PIETRASZKIEWICZ, Officer** | ) | |
| **Garfield Heights Police Department** | ) | |
| **5555 Turney Road** | ) | |
| **Cleveland, Ohio 44125** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ERIC GARCIA, Officer** | ) | |
| **Garfield Heights Police Department** | ) | |
| **5555 Turney Road** | ) | |
| **Cleveland, Ohio 44125** | ) | |
| | ) | |
| **Defendants.** | | |

Now comes Plaintiff, Alicia Olivo ("Plaintiff"), Administrator of the Estate of Carl Ryan Gold, Deceased ("Gold"), by and through her undersigned counsel, and for her First Amended Complaint against Defendants, The City of Garfield Heights ("the City"), Mark Kaye ("Kaye"), Jack Pietraszkiewicz ("Pietraszkiewicz"), and Eric Garcia ("Garcia") (collectively, "Defendants"), states as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343 and 1331, as the claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. Plaintiff further invokes the pendant jurisdiction of this court pursuant to 28 U.S.C. §1367 to consider claims arising under state law that form part of the same case or controversy.

2.  Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## PARTIES

3.  Gold was, at the time of the events giving rise to this lawsuit, a U.S. citizen and a resident of the State of Ohio.

4.  Plaintiff is the Administrator of the Estate of Gold, having been appointed by the Cuyahoga County Probate Court in Case No. 2025 EST 298991.

5.  At all times relevant, Pietraszkiewicz and Garcia were officers of the City's Police Department ("GHPD") acting under color of laws, statutes, ordinances, regulations, policies, customs and usages of the State of Ohio and Cuyahoga County and within the course and scope of

2

their employment with the City. They are both "persons" capable of being sued under 42 U.S.C. § 1983 and are being sued in their official and individual capacities.

6.      At all times relevant, Kaye is and was the City's Chief of Police. Kaye was responsible for the hiring, training and retention of the GHPD's officers and staff.  Kaye is a policymaker for the GHPD's policies, including but not limited to, the GHPD's policies for detentions, search and seizure, and use of force. Kaye is sued in his individual and official capacities. Kaye is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law and as an employee of the City.

7.      At the time Gold was under the custody, care, and control of the GHPD, Pietraszkiewicz, and Garcia, he was entitled to the protections of the Fourth and Fourteenth Amendments to the U.S. Constitution, including the clearly established right to be free from excessive force.

## FACTUAL ALLEGATIONS

8.      Plaintiff hereby incorporates all of the facts, statements and allegations contained in paragraphs 1 through 7 as if fully rewritten herein.

9.      In the early morning hours of December 23, 2024, Gold (age 42) was at the home of his girlfriend, Michelle's, mother and uncle at 11450 Andover Blvd. in Garfield Heights, Ohio. He and Michelle had arrived at the home after attending a concert, at or after which Gold is believed to have ingested an unknown substance.

10.      At approximately 1:45 a.m. on December 23, 2024, Michelle's uncle called the GHPD with concerns about Gold's erratic behavior.  In their Investigative Report Supplement, Pietraszkiewicz and Garcia noted that, upon their arrival, Gold was "lying on his back on the

3

bedroom floor between the bed and wall" and "was sweaty, moving/wiggling all around, breathing heavy, hitting the door and speaking in gibberish about topics that did not make sense.  On his right elbow a scrape was observed that was bleeding."

11.     Pietraszkiewicz further observed that "Gold was sweating profusely and the veins in his neck were bulging."

12.     Though Gold was observed to be "thrashing his arms and legs around," he was laying on the floor between the bed and wall at all relevant times and neither the reports nor the body cameras evidence that Gold ever attempted to stand, move towards, or strike out at either officer.  Nevertheless, Pietraszkiewicz handcuffed Gold's hands in front of him.

13.     When Gold began to kick and thrash while handcuffed, Pietraszkiewicz placed Gold on his left side, during which the Investigative Report Supplement indicates Garcia "controlled [Gold's] legs by placing his right knee over his knees" while Pietraszkiewicz "knelt down on the floor, above [Gold's] head and placed [his] left hand on [Gold's] right shoulder in order to prevent [Gold] from trashing around."  Pietraszkiewicz noted that, while Gold would occasionally begin to thrash his legs and body around, he "would eventually calm back down."

14.     Pietraszkiewicz and Garcia claim that, throughout his restraint, Gold "was kept on his left side with his arms and wrists in front of his body."

15.     In truth, while Pietraszkiewicz and Garcia awaited an emergency squad's arrival, they caused Gold to move into a prone position, lying face down with a blanket under his face. With the weight of his own body on top of his cuffed hands – in addition to the weight of one of the officers on his legs and another at or around his shoulder, Gold was unreasonably and unjustifiably deprived of the ability to safely reposition himself to ensure sufficient airflow.

4

16.     While in the prone position, Gold was repeatedly observed on Pietraszkiewicz'

body camera crying out, "help now!" Gold then stopped trying to lift his head and stopped

responding to the officers.  Despite this change, neither Pietraszkiewicz nor Garcia repositioned

Gold nor released their restraints upon him.

17.     Upon their arrival at 1:59 a.m., the Garfield Heights Fire Department observed Gold

still handcuffed and in the prone position. When Gold was turned over, he was found pulseless

and not breathing.  Despite the immediate institution of CPR and other resuscitative efforts, Gold

could not be resuscitated and was pronounced dead at Marymount Hospital at 2:28 a.m.

## COUNT ONE
### (42 U.S.C. §1983 v. Pietraszkiewicz and Garcia)

18.     Plaintiff hereby incorporates all of the facts, statements and allegations contained

in paragraphs 1 through 17 as if fully rewritten herein.

19.     Plaintiff states that, once he was placed under restraint, Gold was under the custody,

care, and control of the GHPD, Pietraszkiewicz, and Garcia, and had a constitutional interest in

being free from excessive force.

20.     Plaintiff states that Pietraszkiewicz and Garcia, acting alone or in concert and under

color of law, acted intentionally, willfully, wantonly, maliciously, recklessly, and/or showed a

conscious disregard for the rights and safety of Gold, and deprived Gold of rights, privileges, and

immunities guaranteed to him under the Fourth and Fourteenth Amendments to the United States

Constitution.

21.     Plaintiff states that Pietraszkiewicz and Garcia acted in a manner that no objectively

reasonable officer would have acted in, and violated known constitutional rights of Gold, including

but not limited to the constitutional right under the Fourth Amendment to be free from the use of excessive and objectively unreasonable force in the course of an arrest.

22.  Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, Gold was fatally deprived of airflow while placed in the prone position.

23.  Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, Gold endured and suffered extreme conscious physical, mental and emotional pain and suffering, and pecuniary loss.

24.  Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, she is entitled to compensatory damages that will fully and fairly compensate for Gold's injuries, damages and loss, punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein, costs of suit, reasonable attorneys' fees, and all such other relief to which Plaintiff is entitled or this Court deems equitable.

## COUNT TWO
### (42 U.S.C. §1983 v. Kaye and the City)

25.  Plaintiff hereby incorporates all of the facts, statements and allegations contained in paragraphs 1 through 24 as if fully rewritten herein.

26.  Plaintiff states that Kaye and the City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in their city.

27.  Plaintiff states that it was the policy and/or custom of Kaye and the City to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its officers.  Kaye and the City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

6

28.     Plaintiff states that, upon information and belief, Kaye and the City failed to adequately investigate and address, or otherwise respond to and attempt to correct, the behaviors of Pietraszkiewicz and Garcia that caused the violation of Gold's constitutional rights, and took no action to discipline Pietraszkiewicz and Garcia, thereby tacitly authorizing and ratifying their conduct.

29.     As a result of the above-described policies and customs, Pietraszkiewicz and Garcia believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

30.     The above-described policies and customs demonstrated a deliberate indifference on the part of the policy makers of the City as to the constitutional rights of persons within the City, made Pietraszkiewicz and Garcia's unconstitutional acts foreseeable, and were a cause of the violations of Gold's rights alleged herein.

31.     Plaintiff states that, as a direct and proximate result of the actions of Kaye and the City, Gold endured and suffered extreme conscious physical, mental and emotional pain and suffering, and pecuniary loss.

32.     Plaintiff states that, as a direct and proximate result of the actions of Kaye and the City, she is entitled to compensatory damages that will fully and fairly compensate for Gold's injuries, damages and loss, punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein, costs of suit, reasonable attorneys' fees, and all such other relief to which Plaintiff is entitled or this Court deems equitable.

## COUNT THREE
### (Assault and Battery v. Pietraszkiewicz and Garcia)

33.     Plaintiff hereby incorporates all of the facts, statements and allegations contained

7

in paragraphs 1 through 32 as if fully rewritten herein.

34.     Plaintiff states that Pietraszkiewicz and Garcia intentionally, wantonly, or recklessly and without privilege, justification or consent, applied unlawful and unnecessary force in restraining Gold in the prone position with his face pressed into a blanket.

35.     Plaintiff states that, as a direct and proximate result of Pietraszkiewicz and Garcia's assault and battery, Gold was fatally deprived of airflow.

36.     Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, Gold endured and suffered extreme conscious physical, mental and emotional pain and suffering, and pecuniary loss.

37.     Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, she is entitled to compensatory damages that will fully and fairly compensate for Gold's injuries, damages and loss, punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein, costs of suit, reasonable attorneys' fees, and all such other relief to which Plaintiff is entitled or this Court deems equitable.

### COUNT FOUR
**(Reckless and Wanton Misconduct Under Ohio Law v. Pietraszkiewicz and Garcia)**

38.     Plaintiff hereby incorporates all of the facts, statements and allegations contained in paragraphs 1 through 37 as if fully rewritten herein.

39.     Plaintiff states that the acts and omissions of Pietraszkiewicz and Garcia as set forth herein were in a wanton or reckless manner, depriving them of immunity under Ohio Revised Code 2744.03(A)(6)(b).

40.     Plaintiff states that, through their acts and omissions as set forth herein, Pietraszkiewicz and Garcia violated the duty of care they owed Gold and acted with reckless and

8

wanton disregard for Gold's safety and well-being under circumstances where serious injury was substantially likely to and did occur.

41.     Plaintiff states that, as a direct and proximate result of the reckless and wanton misconduct of Pietraszkiewicz and Garcia, Gold suffered physical and emotional pain, resulting in his untimely and wrongful death.

42.     Plaintiff states that, as a direct and proximate result of the actions of Pietraszkiewicz and Garcia, she is entitled to compensatory damages that will fully and fairly compensate for Gold's injuries, damages and loss, punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein, costs of suit, reasonable attorneys' fees, and all such other relief to which Plaintiff is entitled or this Court deems equitable.

## COUNT FIVE
### (Wrongful Death v. All Defendants)

43.     Plaintiff hereby incorporates all of the facts, statements and allegations contained in paragraphs 1 through 42 as if fully rewritten herein.

44.     Plaintiff states that, as a direct and proximate result of the wrongful conduct and omissions set forth herein, Gold suffered an untimely and wrongful death.

45.     Plaintiff states that, as a direct and proximate result of the wrongful conduct and omissions set forth herein, Gold's next of kin, including his adult daughter, his minor daughter, his mother, and his siblings, have suffered and will forever suffer those injuries, losses, and damages set forth in Ohio's wrongful death statutes, including loss of support from Gold's reasonably expected earning capacity, loss of services, loss of prospective inheritance, and loss of society, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, and mental anguish.

9

46.     Plaintiff states that, as a direct and proximate result of the wrongful conduct and omissions set forth herein, Plaintiff is entitled to compensatory damages for all general and special damages and losses, as set forth in Ohio's wrongful death statute, and all such other relief to which Plaintiff is entitled and/or this Court deems equitable.

WHEREFORE, Plaintiff, Alicia Olivo, Administrator of the Estate of Carl Ryan Gold, Deceased, demands judgment against Defendants, Jack Pietraszkiewicz and Eric Garcia, jointly, severally, and/or proportionately, Counts One, Three, Four and Five in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) per Count, in addition to interest and court costs; Plaintiff, Alicia Olivo, Administrator of the Estate of Carl Ryan Gold, Deceased, demands judgment against Defendants, Mark Kaye and The City of Garfield Heights, jointly, severally, and/or proportionately, Counts Two and Five in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) per Count, in addition to interest and court costs; Plaintiff, Alicia Olivo, Administrator of the Estate of Carl Ryan Gold, Deceased, further seeks punitive damages and reasonable attorney fees and costs.

THE BRUNN LAW FIRM CO., L.P.A.

/s/ *Thomas L. Brunn, Jr.*
Thomas L. Brunn, Jr. (#0042453)
Alison D. Ramsey (#0078121)
COUNSEL FOR PLAINTIFF
700 West Saint Clair Avenue
208 Hoyt Block Building
Cleveland, Ohio 44113-1230
Tel: (216) 623-7300
Fax: (216) 623-7330
brunn@brunnlawfirm.com
aramsey@brunnlawfirm.com

10

## JURY DEMAND

A trial by jury is hereby demanded on behalf of Plaintiff herein.


/s/ *Thomas L. Brunn, Jr.*
Thomas L. Brunn, Jr. (#0042453)
COUNSEL FOR PLAINTIFF

11